## Bill Killman *v.* The State.

1. DISORDERLY HOUSE—INDICTMENT.—The words "did unlawfully keep a disorderly house, for the purpose of public prostitution, and as a common resort for prostitutes and vagrants," sufficiently charge the offense defined in Article 396 of the Penal Code. Pasc. Dig., Art. 2027.

2. SAME.—In the statutory definition of the offense of keeping a disorderly house the controlling idea is that it is a structure "kept for the purpose of public prostitution, and as a common resort for prostitutes, vagabonds," etc. A canvas tent is a structure which comes within the definition, if kept for such purposes.

3. MISDEMEANORS—CHARGE OF THE COURT.—Under the provisions of the Code of Criminal Procedure no charge to the jury need be given in misdemeanor cases, except at the written request of one or both of the parties; but, if a charge is given to the jury, it must be given in writing, unless the parties consent that it be given verbally.

APPEAL from the District Court of Bexar. Tried below before the Hon. George H. Noonan.

The case is fully disclosed in the opinion.

*Leslie Thompson* and *J. R. Mason*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

WHITE, J. In so far as the objection to the indictment in this case is concerned, we deem it only necessary to refer to the recent decision of this court in the case of *Bob Brown* v. *The State*, and the authorities there cited. The words " did unlawfully keep a disorderly house for the purpose of public prostitution, and as a common resort for prostitutes, vagabonds, and vagrants," sufficiently charge the offense defined in Article 2027, Paschal's Digest.

The court gave no written charge to the jury, and refused the following instructions asked by the defendant, viz. :

" 1st. A house is any building, edifice, or structure inclosed with walls, and covered, whatever may be the materials used for building. A tent does not come within the meaning of house.

" 2d. If, therefore, from the evidence in this case the jury find that the place which the defendant is charged with keeping a disorderly house was not a house as defined above, but a tent, they will acquit the defendant."

It will be observed that the first sentence in the 1st instruction asked is a literal copy of the definition of a house given in Paschal's Digest, Article 2310, in the chapter treating of and defining arson. Article 2311 of that chapter states that " a tent or open shed does not come within the meaning of a dwelling-house." By reference to Articles 2322, 2323, 2325, it will be seen that the punishment affixed to the burning of " a dwelling-house " is greater than that affixed to the burning of other buildings. And it is to be noted that, whilst it is declared that a tent or open shed does not come within the meaning of a dwelling-

house, it is nowhere in this chapter declared that they are not houses, and may not be the subjects of arson, for the destruction of which a party could be tried and punished.

A tent, in the ordinary acceptation of the word, is a pavilion, portable lodge, or canvas house, inclosed with walls of cloth and covered with the same material. One of the definitions of a house, given by Webster in his invaluable dictionary, is that it is " a place where guests are received and entertained for compensation."

The description given by the witnesses of the structure in which defendant is charged with keeping a disorderly house is that " it is a large tent of canvas, supported by poles let into the ground ; the walls and roof are of canvas, the floor is of plank." The defendant kept the place, had a bar there, received the money over the counter, and all the women who resorted there were prostitutes or whores.

The case of *Callahan* v. *The State*, 41 Texas, 43, cited and relied upon by counsel, was a case of theft from a house, and in that case our learned chief justice says : " Such a structure as that described by the witness would in common language be called, as it was called by the witness, a tent ; never a house. * * * However difficult it might be to define in words the exact difference, in some possible cases, between a house and a tent, it can readily be conceived that there are houses that cannot be taken, called, or understood to be tents, and tents that cannot be called, taken, or understood to be houses ; and this is one of them." 41 Texas, 43. This language, we think, most clearly shows that the decision in that case was mainly made to depend upon the particular facts and circumstances of that particular case ; that the structure therein described, from which the property was stolen, could in no manner be considered a house. The language quoted, however, does in our opinion equally as well convey the idea that there are tents which can be called, taken, and understood to be houses, and the tent

described in this case we think is, if there ever was such an one, just one of those tents.

It is to be recollected that in the definition given above, taken from the chapter on Arson (Pasc. Dig., Art. 2310), the language is : " A house is any building, edifice, or structure inclosed with walls, and covered, whatever *may be the materials used for building.*" This is the definition invoked by defendant as correct. Applying this definition to the structure kept by defendant, and, by every fair construction of language, his tent was a house. The materials out of which the house is constructed are, by the very language of the statute, made no criterion by which to judge of the character of the building. We can well imagine why such a building as that described in *Callahan* v. *The State* would not be considered such a house as would support a charge of theft from a house. The prominent controlling idea connected with that offense was that everything contained in the building was, and should be, protected securely and sacredly by the walls inclosing it ; which idea could not attach to a structure which, in the language of the court, " came so near not even being a tent " * *. * " that it could not be other than a tent."

The controlling idea in the offense under consideration is that the structure is a place " kept for the purpose of public prostitution, or as a common resort for prostitutes and vagabonds." To hold that such a house could not be kept in a tent, and especially in such a tent as that described in the evidence in this case, would be in effect to close up all bawdy and disorderly houses, simply because they were made of wood, brick, or stone, and to give free and unrestrained license to all those who desire to carry on the illegal business in pavilions of the richest material, or tents of ordinary canvas or cloth, no matter how large and commodious, or how many and richly-furnished rooms or compartments they might contain. Such structures are more

15

apt to become disorderly nuisances than houses of brick or stone, owing to the facility with which noises made within could be heard from without.    See *Clifton* v. *The State*, 53 Ga. 241.

Taking the whole instruction together, as asked, we do not think the court erred in refusing to give it.

As to the objection shown by the bill of exceptions, that the court did not give a written charge, the case being a misdemeanor the law does not require the court to give a written charge, or in fact any charge at all, except in certain cases.    The rules are as follows :

"In criminal actions for misdemeanor the court is not required to charge the jury except at the request of counsel on either side ; but, when so requested, shall give or refuse such charges, with or without modifications as are asked, in writing."    Pasc. Dig., Art. 3063.

"Art. 3064. No verbal charge shall be given in any case whatever, except in cases of misdemeanor, and then only by consent of the parties.

"Art. 3065. When charges are asked, the judge shall read to the jury only such as he gives."

It follows from these rules, 1st, that in misdemeanors the court is not required to charge the jury at all ; 2d, that he may charge them in writing, when the parties request it, and present their written instructions ; and, 3d, but if the court does charge the jury in such cases, he can only charge them verbally when the parties consent to that character of charge.

We find no error in the proceedings had on the trial in the lower court, and the judgment is, therefore, affirmed.

*Affirmed.*